**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

RAY HARVICK,

    Plaintiff,

v.                                                       Case No: 6:14-cv-937-Orl-40GJK

OAK HAMMOCK PRESERVE
COMMUNITY OWNERS
ASSOCIATION INC., BARRY
RUBIN, KAREN VARASDI,
and WALTER C. ANGELL,

    Defendants.

_____

## ORDER

This cause comes before the Court on the following:

1. Defendants, Barry Rubin, Karen Varasdi, and Walter Angell's Motion to Dismiss Plaintiff's Complaint With Prejudice With Incorporated Memorandum of Law (Doc. 13), filed July 16, 2014;

2. Defendant, Oak Hammock Preserve Community Owners Association, Inc.'s Motion to Dismiss Plaintiff's Complaint With Prejudice With Incorporated Memorandum of Law (Doc. 14), filed July 16, 2014;

3. Plaintiff's Response to Motion to Dismiss by Defendant Oak Hammock Preserve Community (Doc. 17), filed July 28, 2014;

4. Plaintiff's Response to Motion to Dismiss by Defendants Barry Rubin, Karen Varasdi, and Walter Angell (Doc. 18), filed July 28, 2014;

5. Defendants, Barry Rubin, Karen Varasdi, and Walter Angell's Reply in Support of its Motion to Dismiss Plaintiff's Complaint with Prejudice

      (Doc. 24), filed August 26, 2014; and

6. Defendant, Oak Hammock Preserve Community Owners Association, Inc.'s Reply in Support of its Motion to Dismiss Plaintiff's Complaint with Prejudice (Doc. 25), filed August 26, 2014.

Upon consideration, the Court grants in part and denies in part Defendants' motions to dismiss. Plaintiff's Complaint will be dismissed without prejudice with leave to amend.

## I. BACKGROUND[1]

This dispute arises out of Defendants' allegedly discriminatory conduct toward Plaintiff and his family. Plaintiff, Ray Harvick ("Harvick"), owned a home governed by Defendant, Oak Hammock Preserve Community Owners Association, Inc. ("Oak Hammock"), where he lived with his wife and child, both of whom are of Asian descent. (Doc. 1, p. 4, ¶¶ 1–2). On December 9, 2010, Defendants filed a lawsuit against Harvick in state court to foreclose on his home due to a dispute regarding the maintenance of his yard. (*Id.* at p. 4, ¶ 4). On May 2, 2011, the parties in the foreclosure action voluntarily dismissed the lawsuit. (*Id.* at p. 4, ¶ 6). On August 8, 2013, Defendants initiated a second lawsuit against Harvick in state court, this time based purely on breach of contract, for the same yard maintenance dispute as the foreclosure action. (*Id.* at p. 4, ¶ 7).

In June 2013, Harvick and his family moved out of their home in Oak Hammock due to Defendants' harassment, stalking, and discriminatory conduct. (*Id.* at p. 4, ¶ 9).

---

1. This account of the facts is taken from Plaintiff's Complaint (Doc. 1), the allegations of which the Court must accept as true in considering Defendants' motions to dismiss. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

On April 19, 2014, Harvick and his wife began the process of selling the home. (*Id.* at p. 4, ¶ 10). On June 4, 2014, Harvick and his wife finalized an agreement to sell their home. (*Id.* at p. 5, ¶ 11). At the time he filed the Complaint, Harvick expected that the sale of the home would occur on July 25, 2014. (*Id.* at p. 6, ¶ 23). Harvick's responses in opposition to Defendants' motions to dismiss disclose that the closing occurred on July 18, 2014 and that Harvick and his family no longer live in the house. (Doc. 17, p. 6; Doc. 18, p. 6).

Harvick, proceeding *pro se*, initiated this action on June 17, 2014 by filing the Complaint. (Doc. 1). The essence of Harvick's claims is that Defendants interfered with the sale of his home by placing a false lien on his property and that these actions caused his home to depreciate in value. (*Id.* at p. 7, ¶¶ 25–28). Harvick believes that Defendants' motivation was to discriminate against his family as a mixed Asian-American household. (*Id.* at p. 7, ¶¶ 25, 30, 32). To that end, Harvick alleges six claims against all Defendants. Count 1 alleges that Defendants violated the federal Fair Housing Act. (*Id.* at pp. 6–7, ¶¶ 24–28). Count 2 alleges that Defendants violated the Florida Fair Housing Act. (*Id.* at p. 7, ¶¶ 29–30). Count 3 is titled as a claim for mental anguish. (*Id.* ¶¶ 31–32). Count 4 alleges a claim for abuse of process. (*Id.* at p. 8, ¶¶ 33–34). Count 5 purports to enforce a Florida criminal statute for stalking and harassment. (*Id.* at p. 8, ¶¶ 35–36). Finally, Count 6 alleges breach of fiduciary duty. (*Id.* at pp. 8–9, ¶¶ 37–38). Defendants now move to dismiss Harvick's Complaint for failing to state a claim upon which relief can be granted. (Docs. 13, 14).

II.   **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 8 requires that all complaints set out "a short and plain statement" of each claim the plaintiff intends to make and the relief he seeks. Fed.

R. Civ. P. 8(a)(2)–(3). Rule 8 advises that all statements within the complaint be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Federal Rule of Civil Procedure 10 additionally requires that a plaintiff state his claims "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Overall, a plaintiff will satisfy these pleading requirements as long as the complaint gives each defendant fair notice of what the plaintiff is claiming and the factual grounds for each claim. *Synergy Real Estate of Sw. Fla., Inc. v. Premier Prop. Mgmt. of Sw. Fla., LLC*, 578 F. App'x 959, 961 (11th Cir. 2014).

A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. In order to survive a motion to dismiss made under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). A claim is plausible on its face when the plaintiff alleges enough facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mere legal conclusions or recitation of the elements of a claim are not enough. *Twombly*, 550 U.S. at 555. District courts must accept all well-pleaded allegations within the complaint as true. *Id.* Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994).

The Court additionally has a duty to liberally construe a *pro se* plaintiff's complaint and to afford greater leeway in alleging a claim than what is given to licensed attorneys. *Tennyson v. ASCAP*, 477 F. App'x 608, 609–10 (11th Cir. 2012). Nevertheless, "a *pro se* party must follow the rules of procedure and evidence, and the district court has no

duty to act as [a *pro se* party's] lawyer." *Id.* at 610 (quoting *United States v. Ly*, 646 F.3d 1307, 1315 (11th Cir. 2011)) (internal quotation marks omitted); *see also Porter v. Duval Cnty. Sch. Bd.*, 406 F. App'x 460, 462 (11th Cir. 2010). Further, a district court may not "rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Iqbal*, 556 U.S. 662 (2009).

## III.   DISCUSSION

### A.   Harvick Fails to State Claims for Violations of the Fair Housing Act and the Florida Fair Housing Act

Counts 1 and 2 of Harvick's Complaint allege violations of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619, and the Florida Fair Housing Act ("FFHA"), Fla. Stat. §§ 760.20–.37, respectively. (Doc. 1, pp. 6–7, ¶¶ 24–30). Although the Complaint does not identify which provision or provisions of each statutory scheme Defendants have allegedly violated, Harvick reveals in his responses to Defendants' motions to dismiss that he intends to sue for violations of 42 U.S.C. §§ 3604(b), (c), (e), and (f). (Doc. 17, p. 8; Doc. 18, p. 9). The Court will additionally assume that Harvick intends to sue under Florida's counterparts to those provisions, Fla. Stat. §§ 760.23(1), (2), (3), (5), and (7).

"The FHA and the [FFHA] are substantively identical, and therefore the same legal analysis applies to each." *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014). In order to prevail on any claim under 42 U.S.C. § 3604, "a plaintiff must demonstrate 'unequal treatment on the basis of race that affects the availability of housing.'" *Robinson v. Section 23 Prop. Owner's Ass'n, Inc.*, No. 2:12-cv-675-FtM-29CM, 2014 WL 4358486, at *6 (M.D. Fla. Sept. 2, 2014) (quoting *Jackson v. Okaloosa Cnty., Fla.*, 21 F.3d 1531, 1542 (11th Cir. 1994)). A plaintiff may establish

unequal treatment in one of three ways: (1) the defendant intentionally discriminated against the plaintiff, (2) the defendant's conduct disparately impacted the plaintiff's race as a group, or (3) the defendant refused to make a reasonable accommodation because of the plaintiff's race.  *See Bonasera v. City of Norcross*, 342 F. App'x 581, 583 (11th Cir. 2009).

Harvick alleges that Defendants discriminated against his family because his wife and daughter are of Asian descent.  (Doc. 1, pp. 6–7, ¶¶ 22, 25, 30).  However, Harvick has failed to allege any facts or conduct by Defendants to support a claim of discrimination.  The most that the Court is able to infer from the Complaint is that Defendants sued Harvick due to a yard maintenance dispute (*id.* at pp. 4–7, ¶¶ 4, 7, 25–28, 30) and that Harvick's wife and daughter are Asian (*id.* at pp. 4–6, ¶¶ 1, 22).  There are no allegations of any intentional conduct by Defendants amounting to discrimination based on race, any policies or actions by Defendants that disparately impacted Asian families, or any refusal by Defendants to make a reasonable accommodation because of race.  There is simply no link between the conduct Harvick alleges and the race of his wife and daughter.  For these reasons, Counts 1 and 2 fail to state claims for discrimination under either the FHA or the FFHA and will be dismissed without prejudice.

Defendants also move to dismiss Harvick's FHA claim as barred by the statute of limitations.  (Doc. 13, pp. 4–5; Doc. 14, p. 4).  Defendants correctly state the law that claims made under the FHA must be made within two years from when a reasonably prudent plaintiff would realize that he is being discriminated against.  *Telesca v. Vill. of Kings Creek Condo. Ass'n, Inc.*, 390 F. App'x 877, 882 (11th Cir. 2010).  Defendants argue that Harvick's claims under the FHA arose in December 2010 at the latest, as that is the time of Oak Hammock's first lawsuit against Harvick.  (Doc. 13, pp. 4–5; Doc. 14,

p. 4). Because Harvick initiated this lawsuit in 2014, Defendants conclude that his FHA claim is time-barred. (Doc. 13, pp. 4–5; Doc. 14, p. 4).

However, based on the facts presented by both parties, the Court is unable to find that any claim under the FHA is barred by the two year statute of limitations. Although Oak Hammock first sued Harvick in 2010, that suit was voluntarily dismissed with prejudice less than a year later. (Doc. 13, Ex. 1; Doc. 14, Ex. 1). Because this was a positive resolution in Harvick's favor, the Court cannot conclude that Harvick reasonably should have known he was being discriminated against. Instead, the factual allegations contained in the Complaint show that Harvick did not discern any discrimination until August 2013 at the earliest, when Oak Hammock filed the second lawsuit. (Doc. 1, p. 4, ¶ 7). Harvick has therefore asserted his rights under the FHA within the statute of limitations.

### B. Count 3 Fails to State a Claim Upon Which Relief Can Be Granted

Harvick titles Count 3 as a claim for "[m]ental anguish, loss of dignity Florida Statute 760.11(5)." (Doc. 1, p. 7). On the face of Count 3, neither mental anguish nor loss of dignity are claims for relief recognized under either Florida or federal law. Instead, mental anguish and loss of dignity are typically types of damages or injuries a person may suffer as a result of another's wrongdoing. Although a stretch, a claim for mental anguish and loss of dignity could be construed as a claim for intentional infliction of emotional distress. Additionally, the statute to which Harvick cites is a provision of the Florida Civil Rights Act ("FCRA"), Fla. Stat. §§ 760.01–.11. The Court therefore analyzes Count 3 as both a claim for intentional infliction of emotional distress and as a claim made under the FCRA.

In order to state a claim for intentional infliction of emotional distress, a plaintiff

must establish four elements: (1) the defendant acted intentionally or recklessly, (2) the defendant's conduct was outrageous, (3) the defendant's conduct caused emotional distress to the plaintiff, and (4) the plaintiff's emotional distress was severe. *Stewart v. Walker*, 5 So. 3d 746, 749 (Fla. Dist. Ct. App. 2009). Harvick's Complaint is at least deficient as to the third and fourth elements.

Even if the Court were to assume that the limited factual allegations of the Complaint establish sufficiently outrageous conduct under Florida law, Harvick has not alleged that this conduct caused him any severe emotional distress. As a matter of law, emotional distress is severe where it is "such that no reasonable person could be expected to endure it." Restatement (Second) of Torts § 46 cmt. j. The only statement in the Complaint remotely concerning emotional distress is that Harvick has suffered "mental anguish" from Defendants' filing lawsuits against him based on a fabricated yard maintenance dispute. (Doc. 1, p. 7, ¶ 32). Aside from not identifying with particularity the emotional distress Harvick allegedly suffered, there is no doubt that a reasonable person would be able to endure the mental anguish of defending against an allegedly frivolous lawsuit. Therefore, Count 3 cannot state a claim for intentional infliction of emotional distress.

Count 3 also cannot state a claim under the FCRA. In order to bring a claim under the provision of the FCRA to which Harvick cites, a plaintiff must first file a complaint with the Florida Commission on Human Rights or the Equal Employment Opportunity Commission within 365 days of an alleged violation. Fla. Stat. § 760.11(1); *Jones v. Bank of Am.*, 985 F. Supp. 2d 1320, 1330 (M.D. Fla. 2013). Harvick has neither stated that he has complied with this provision nor attached any evidence showing as much. Moreover, this provision of the FCRA is intended to provide relief in the context of employment

discrimination.  *See* Fla. Stat. § 760.11.  Since Harvick does not allege that he was employed by any of the Defendants at any time relevant to this action, Count 3 cannot state a claim under § 760.11.  Defendants' motions to dismiss will be granted as to Count 3.

### C.   Count 4 Fails to State a Claim for Abuse of Process[2]

In order to state a claim for abuse of process, a plaintiff must establish three elements: (1) an illegal, improper, or perverted use of process by the defendant, (2) the defendant's ulterior motive or purpose in exercising the use of process, and (3) damages resulting from the defendant's actions.  *Valdes v. GAB Robins N. Am., Inc.*, 924 So. 2d 862, 867 n.2 (Fla. Dist. Ct. App. 2006).  In order for a defendant's use of process to be abusive, the plaintiff must show that the defendant acted or continues to act with the willful intent to misuse the legal system.  *Gause v. First Bank of Marianna*, 457 So. 2d 582, 584 (Fla. Dist. Ct. App. 1984).  The fact that a litigant commenced a lawsuit that was frivolous or based out of a malicious motive is insufficient to constitute an abuse of process.  *Cazares v. Church of Scientology of Cal., Inc.*, 444 So. 2d 442, 444 (Fla. Dist. Ct. App. 1983).

Harvick alleges that Defendants abused the legal process by filing two lawsuits against him over a fabricated yard maintenance dispute.  (Doc. 1, pp. 4–8, ¶¶ 4, 7, 21, 25–28, 34).  However, Harvick does not state any facts that would allow the Court to infer that Defendants initiated these lawsuits with the willful intent to misuse the legal system.  Although it is clear that Harvick believes the lawsuits at issue are without any merit, the

---

2. Harvick also titles Count 4 as a claim for "dilatory action" made under § 760.11(5), Florida Statutes.  However, for the same reasons explained in Section III.B, Harvick does not state a claim under that statutory provision.

frivolous use of process does not constitute an illegal, improper, or perverted use of process to sustain a cause of action. *Cazares*, 444 So. 2d at 444. Without sufficient factual allegations to support Harvick's claim, Count 4 will be dismissed without prejudice.

### D. Count 5 Fails to State a Claim Upon Which Relief Can Be Granted

Count 5 of the Complaint seeks to enforce § 784.048, Florida Statutes, which defines and criminalizes stalking in Florida. Perhaps realizing that there is no private right of action to enforce this statute, Harvick now states in his responses to Defendants' motions to dismiss that Count 5 is actually a petition for an injunction made pursuant to § 784.0485. (Doc. 17, p. 7; Doc. 18, p. 7). However, that provision explicitly provides that a petition for an injunction against stalking may only be filed in the Florida circuit court for the circuit in which the petitioner resides, where the respondent resides, or where the stalking occurred. Fla. Stat. § 784.0485(1)(f). Consequently, this Court lacks the jurisdiction to consider Count 5. Moreover, it is clear from the face of the Complaint that Count 5 does not comply with the required form for an injunction petition. *See* Fla. Stat. § 784.0485(3)(b). As a result, Count 5 fails to state a claim for relief and Defendants' motions to dismiss will be granted.

### E. Count 6 Fails to State a Claim for Breach of Fiduciary Duty

In order to state a claim for breach of fiduciary duty, a plaintiff must show three elements: (1) the existence of a fiduciary duty, (2) the breach of that duty, and (3) damages resulting from the breach. *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). A fiduciary relationship may be express or implied. *Hogan v. Provident Life & Accident Ins. Co.*, 665 F. Supp. 2d 1273, 1287 (M.D. Fla. 2009). Express fiduciary relationships are created by a contract or by a legal proceeding. *Id.* An implied fiduciary duty may arise where the factual circumstances of the relationship indicate that one party has

placed their trust and confidence in another for a special purpose and that the other party accepted this trust and confidence.  *Id.*  Although there is no exhaustive list of fiduciary relationships, fiduciary duties most commonly arise between attorneys and their clients, officers and shareholders of a corporation, personal representatives of an estate and the estate's heirs, and between trustees and the beneficiaries of a trust.  *See* Patrick McGinley, Fla. Prac., Elements of an Action § 506:1 (2014–2015 ed.).

It is well-settled that homeowners' associations owe a fiduciary duty to all members of the association *as a whole*, but not to each member individually.  *Lumbermens Mut. Cas. Co. v. Dadeland Cove Section One Homeowners' Ass'n, Inc.*, No. 06-22222-CIV, 2007 WL 2979828, at *2 (S.D. Fla. Oct. 11, 2007); *Chambless v. Officers & Directors of Snapper Creek*, 743 So. 2d 129, 130 (Fla. Dist. Ct. App. 1999), *review denied* 767 So. 2d 454 (Fla. 2000).  As a result, an individual homeowner cannot impose liability against a homeowners' association for breach of a fiduciary duty solely due to his status as a member of the association; the individual homeowner would need to allege a separate basis amounting to a fiduciary duty between himself and the association.

Here, Harvick fails to allege a fiduciary duty separate and apart from his status as an individual member of Oak Hammock.  Rather, Harvick seeks to impose liability against Oak Hammock solely on the grounds that Oak Hammock's actions resulted in the depreciation of his individual property.  (Doc. 1, pp. 8–9).  Because homeowners' associations owe no fiduciary duty to their individual members, Harvick fails to state a claim for breach of fiduciary duty against Oak Hammock.

It is also well-established that officers and directors of homeowners' associations are immune from liability in their individual capacities for actions they take as officers and directors.  Fla. Stat. § 617.0834(1); *Hawn v. Shoreline Towers Phase I Condo. Ass'n, Inc.*,

11

No. 3:07-cv-97/RV/EMT, 2009 WL 691378, at *8 n.10 (N.D. Fla. Mar. 12, 2009); *Nero v. Cont'l Country Club R.O., Inc.*, 979 So. 2d 263, 267–68 (Fla. Dist. Ct. App. 2007); *cf. Berg v Wagner*, 935 So. 2d 100, 101 & n.2 (Fla. Dist. Ct. App. 2006).  A plaintiff may overcome this immunity only by showing that the officer or director engaged in criminal activity, fraud, self-dealing, unjust enrichment, or acted with "willful disregard of human rights, safety, or property."  Fla. Stat. § 617.0834(1)(b); *Nero*, 979 So. 2d at 267–68; *Berg*, 935 So. 2d at 101 & n.2.

Harvick sues Oak Hammock's officers and directors for creating a yard maintenance dispute where there was none, initiating lawsuits against Harvick, and placing baseless liens on Harvick's home.  (Doc. 1, pp. 4–7, ¶¶ 4, 7, 25–28).  In addition to the fact that Harvick has failed to allege any type of fiduciary relationship between himself and any of these officers and directors, he has additionally failed to allege that the individual Defendants engaged in criminal conduct, fraud, self-dealing, unjust enrichment, or acted with willful disregard of Harvick's human rights or property rights sufficient enough to overcome the immunity provided to these individuals under Florida law.  For those reasons, Count 6 does not state a claim against the individual Defendants as well.  Defendants' motions to dismiss will be granted as to Count 6.

### F.    Leave to Amend

As a final matter, the Court must discuss whether it is appropriate to grant Harvick leave to amend the Complaint.  It is well-settled that a court should not dismiss a plaintiff's complaint for failing to state a claim without first granting leave to amend.  *Thomas v. Farmville Mfg. Co.*, 705 F.2d 1307, 1307 (11th Cir. 1983).  Nevertheless, a court may dismiss a claim without affording an opportunity to amend "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by

amendment previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Defendants request the Court to dismiss Harvick's Complaint with prejudice. (Doc. 13, p. 12; Doc. 14, p. 10). However, the Court finds that dismissal of Harvick's claims with prejudice is inappropriate at this juncture. Harvick has not yet been afforded an opportunity to amend in these proceedings and the Court does not see any of the factors listed in *Bryant* present here at this time. Moreover, because Harvick is proceeding *pro se* in this matter, the Court will afford him another opportunity to state a viable claim against Defendants. Accordingly, the Court will deny Defendants' requests to dismiss the Complaint with prejudice.

In amending his complaint, Harvick should specifically address the deficiencies noted by the Court in this Order. Moreover, as mentioned earlier, just because Harvick is proceeding *pro se* does not excuse him from the pleading requirements of the Federal Rules of Civil Procedure and this Court's Local Rules. Therefore, Harvick should be mindful to support his claims with clear and concise factual allegations, numbered in separate paragraphs, and reasonably limited to a single set of circumstances per paragraph.[3]

---

3. Harvick can access the Federal Rules of Civil Procedure at http://www.law.cornell.edu/rules/frcp and this Court's Local Rules at http://www.flmd.uscourts.gov/LocalRules.htm. Harvick may also visit the Court's library, which is open to the public during normal business hours, in order to access these and other legal resources.

IV.  **CONCLUSION**

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' motions to dismiss (Docs. 13, 14) are **GRANTED IN PART** and **DENIED IN PART** as stated in this Order.

2. Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**.

3. Plaintiff has **until and including March 9, 2015** to file an amended complaint to correct the deficiencies identified herein.  **Plaintiff's failure to file an amended complaint within the time provided will result in the Court closing this case without further notice.**

**DONE AND ORDERED** in Orlando, Florida on February 17, 2015.

_____
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties