**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

RAY HARVICK,

    Plaintiff,

v.                                Case No:  6:14-cv-937-Orl-40GJK

OAK HAMMOCK PRESERVE
COMMUNITY OWNERS ASSOCIATION
INC., BARRY RUBIN, and KAREN
VARASDI,

    Defendants.

_____

## ORDER

This cause comes before the Court on Defendants, Oak Hammock Preserve

Community Owners Association, Inc., Barry Rubin and Karen Varasdi's Motion to Dismiss

Plaintiff's Amended Complaint with Prejudice (Doc. 34), filed March 18, 2015.  Plaintiff

responded on March 26, 2015 (Doc. 35) and Defendants filed a reply on April 9, 2015

(Doc. 38).  Upon consideration, the Court grants in part and denies in part Defendants'

motion to dismiss.

## I.    BACKGROUND[1]

*Pro se* Plaintiff, Ray Harvick ("Harvick"), owned a home governed by Defendant,

Oak Hammock Preserve Community Owners Association, Inc. ("Oak Hammock"), whose

board of directors include Defendants Barry Rubin and Karen Varasdi.  (Doc. 33, p. 7,

---

[1]   This account of the facts is taken from Plaintiff's Amended Complaint (Doc. 33), the allegations of which the Court must accept as true in considering Defendants' motion to dismiss.  *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

¶ 2).  Harvick lived in the home with his wife and child, both of whom are of Asian descent. (*Id.* at p. 7, ¶ 1).  Harvick states that Oak Hammock initiated a mortgage foreclosure action against him in state court for a yard maintenance dispute.  (*Id.* at p. 7, ¶ 4).  Although the parties eventually agreed to dismiss that lawsuit with prejudice (*id.* at p. 8, ¶ 6), Oak Hammock then sued Harvick approximately two years later for breach of contract based on the same yard maintenance dispute (*id.* at p. 8, ¶ 7) and filed liens and a lis pendens against Harvick's property without notifying him or his wife (*id.* at p. 9, ¶ 9; *id.* at p. 14, ¶ 34).  Because of Oak Hammock's continuous legal actions against Harvick, Harvick and his family decided to move out of their home in 2014.  (*Id.* at p. 9, ¶¶ 10–12).

Harvick maintains that the above legal actions taken by Oak Hammock were fabricated, motivated by Defendants' animus toward Asian Americans, and that this animus caused Harvick and his family to move from their home.  Harvick points to the fact that Defendants appear to have targeted Asian American households within the Oak Hammock community in taking legal action.  (*Id.* at pp. 11–12, ¶ 23).  Specifically, Harvick states that Rubin and Varasdi disregarded the established procedure for inspecting homes, conducted secret board meetings without informing either the homeowners or the other members of Oak Hammock's board of directors, and disproportionately inspected households composed of Asian American families.  (*Id.* at pp. 8–9, ¶ 8).

Harvick initiated this lawsuit on June 17, 2014.  (Doc. 1).  Harvick has since filed the Amended Complaint, in which he alleges violations of the Fair Housing Act and the Florida Fair Housing Act, along with several other claims arising under Florida common law.  (Doc. 33).  Defendants now move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 8 requires that all complaints set out "a short and plain statement" of each claim the plaintiff intends to make and the relief he seeks.  Fed. R. Civ. P. 8(a)(2)–(3).  Rule 8 advises that all statements within the complaint be "simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  Federal Rule of Civil Procedure 10 additionally requires that a plaintiff state his claims "in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  Fed. R. Civ. P. 10(b).  Overall, a plaintiff will satisfy these pleading requirements as long as the complaint gives each defendant fair notice of what the plaintiff is claiming and the factual grounds for each claim.  *Synergy Real Estate of Sw. Fla., Inc. v. Premier Prop. Mgmt. of Sw. Fla., LLC*, 578 F. App'x 959, 961 (11th Cir. 2014) (per curiam).

A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's complaint.  In order to survive a motion to dismiss made under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face when the plaintiff alleges enough facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Mere legal conclusions or recitation of the elements of a claim are not enough.  *Twombly*, 550 U.S. at 555.  District courts must accept all well-pleaded allegations within the complaint as true.  *Id.*  Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor.  *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994).

The Court additionally has a duty to liberally construe a *pro se* plaintiff's complaint and to afford greater leeway in alleging a claim than what is given to licensed attorneys. *Tennyson v. ASCAP*, 477 F. App'x 608, 609–10 (11th Cir. 2012) (per curiam). Nevertheless, "a *pro se* party must follow the rules of procedure and evidence, and the district court has no duty to act as [a *pro se* party's] lawyer." *Id.* at 610 (internal quotation marks omitted); *see also Porter v. Duval Cnty. Sch. Bd.*, 406 F. App'x 460, 462 (11th Cir. 2010) (per curiam).   Further, a district court may not "rewrite an otherwise deficient pleading in order to sustain an action."   *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Iqbal*, 556 U.S. 662 (2009).

## III.   DISCUSSION

### A.   Harvick States Claims Under the Fair Housing Act and Florida Fair Housing Act

Counts 1 and 2 of the Amended Complaint allege violations of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619, and the Florida Fair Housing Act ("FFHA"), Fla. Stat. §§ 760.20–.37, respectively.  (Doc. 33, pp. 13–15, ¶¶ 26–36).  Because "[t]he FHA and the [FFHA] are substantively identical, . . . the same legal analysis applies to each." *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014). The Court will therefore only reference the FHA in the following analysis, but will apply the law equally to Harvick's FFHA count.

Although the Amended Complaint intends to premise liability under §§ 3604(a) and (c) of the FHA, Harvick states in his response to Defendants' motion to dismiss that he also intends to proceed under § 3617.  (Doc. 35, pp. 3–4).  The Court therefore analyzes the Amended Complaint under all three provisions.  Section 3604(a) makes it unlawful to

"refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin."   42 U.S.C. § 3604(a).[2] Section 3604(c) makes it unlawful to "make, print, or publish, or cause to be made, printed or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . familial status . . . or an intention to make any such preference, limitation, or discrimination." *Id.* § 3604(c).[3]  The courts that have addressed the issue read both provisions as requiring either the sale or rental of a dwelling or the potential sale or rental of a dwelling to state a claim for relief. *E.g.*, *Hallmark Developers, Inc. v. Fulton Cnty., Ga.*, 466 F.3d 1276, 1283 (11th Cir. 2006) (requiring that the discrimination alleged affect the availability of housing); *see also Gourlay v. Forest Lake Estates Civic Ass'n of Port Richey, Inc.*, 276 F. Supp. 2d 1222, 1230 (M.D. Fla. 2003) (listing cases), *vacated due to settlement*, No. 8:02CV1955T30TGW, 2003 WL 22149660 (M.D. Fla. Sept. 16, 2003).  Because Harvick does not claim to have been discriminated against in the sale or rental or potential sale or rental of a dwelling, the Amended Complaint does not state a claim under either § 3604(a) or § 3604(c).

Unlike § 3604, § 3617 is not limited to the sale or rental of a dwelling.  Instead, § 3617 is broader in scope, making it unlawful

> to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of,

---

[2]   These same protections are afforded by the FFHA in § 760.23(1), Florida Statutes.
[3]   These same protections are afforded by the FFHA in § 760.23(3), Florida Statutes.

any right granted or protected by section . . . 3604 . . . of this
title.

42 U.S.C. § 3617.[4]  While some courts have interpreted § 3617 to require the violation of

another underlying FHA right, the Eleventh Circuit has clarified that § 3617 provides its

own separate substantive rights.  *See Sofarelli v. Pinellas Cnty.*, 931 F.2d 718, 722 (11th

Cir. 1991).   Indeed, the Eleventh Circuit held in *Sofarelli* that § 3617 regulates any

discriminatory conduct occurring before, during, or after the sale or rental of a dwelling

protected by the FHA.  *See id.* at 721–23.  Therefore, in order to impose liability under

§ 3617, a plaintiff must show that the defendant discriminatorily coerced, intimidated,

threatened, or interfered with: (1) the plaintiff's exercise of rights under the FHA, (2) the

plaintiff's enjoyment of a housing right after his exercise of that right, or (3) the plaintiff's

assistance to a protected person in the enjoyment of a housing right.  *Lawrence v.*

*Courtyards at Deerwood Ass'n, Inc.*, 318 F. Supp. 2d 1133, 1143–44 (S.D. Fla. 2004).  A

plaintiff will succeed in stating a claim under any of these theories by providing direct or

circumstantial evidence of discrimination "that is so severe or pervasive that it will have

the effect of causing a protected person to abandon the exercise of his or her housing

rights."  *Gourlay*, 276 F. Supp. 2d at 1235.

Defendants argue that Harvick fails to allege conduct sufficiently severe or

pervasive to state a claim under § 3617, which Defendants contend only contemplates

conduct involving violence or threats of violence.  (Doc. 38, pp. 1–3).  It is true that much

of the case law addressing § 3617 claims not based on another underlying FHA violation

involve overt acts or threats of violence.  *See, e.g.*, *Ohana v. 180 Prospect Place Realty*

*Corp.*, 996 F. Supp. 238, 243 (E.D.N.Y. 1998) (allowing claim to proceed where plaintiff

---

4    These same protections are afforded by the FFHA in § 760.37, Florida Statutes.

alleged numerous threats of physical violence, stalking, and anti-Semitic epithets); *Stirgus v. Benoit*, 720 F. Supp. 119, 122 (N.D. Ill. 1989) (finding the firebombing of plaintiff's house actionable).  However, the Court disagrees with Defendants' position that this is the only type of conduct that can interfere with a protected person's housing rights under § 3617.  Certainly, nonviolent conduct can also force a person to abandon the enjoyment of a housing right if it is sufficiently severe or pervasive.  This more expansive reading of § 3617 to include nonviolent conduct aimed at ousting protected persons from their homes is consistent with the FHA's broad purpose of eliminating segregated communities.  *South-Suburban Hous. Ctr. v. Greater S. Suburban Bd. of Realtors*, 935 F.2d 868, 882 (7th Cir. 1991), *cert. denied*, 502 U.S. 1074 (1992).

Here, Harvick alleges that Defendants intentionally initiated numerous forms of frivolous legal action against him and his family, including the filing of two lawsuits and the recording of liens and a lis pendens against his home based on a fabricated yard maintenance dispute.  (Doc. 33, pp. 7–9, 14, ¶¶ 4, 6–7, 9, 34).  Harvick further alleges that Defendants specifically targeted his home because his wife and daughter are of Asian descent.  (*Id.* at p. 13, ¶ 27).  In support, Harvick conducted a statistical analysis showing that, although Asian households constitute only 4% of homes governed by Oak Hammock, they comprised 30% of households acted against by Oak Hammock.  (*Id.* p. 14, ¶ 29).  Harvick further states that Defendants conducted secret board meetings to determine which households within Oak Hammock to act against and that their decisions were based on animus toward Asian Americans.  (*Id.* at pp. 8–9, ¶ 8).  As a result, Harvick and his family were forced to move from their home.  (*Id.* at p. 9, ¶¶ 10–12).  These facts allow the Court to reasonably infer that Defendants discriminated against Harvick and his family on the basis of a characteristic protected by the FHA and that the conduct was

severe or pervasive enough to cause them to abandon the enjoyment of their protected housing rights.  Harvick therefore states claims against Defendants for violation of the FHA and FFHA.

**B.      The Remainder of the Amended Complaint Constitutes Impermissible Shotgun Pleading**

"Shotgun" pleading results when it is impossible for a defendant to know which factual allegations of the complaint are meant to support which claims for relief.  "The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002).

The remainder of the Amended Complaint constitutes shotgun pleading.  Harvick combines several claims for relief into Counts 4 and 5 of the Amended Complaint,[5] including claims for abuse of process, violation of Fla. Stat. § 760.11, intentional infliction of emotional distress, invasion of privacy, trespassing, stalking, and harassment. In pleading these claims, Harvick confusingly combines and comingles the legal elements and factual allegations meant to support each claim.  Harvick also incorporates by reference the factual allegations supporting his FHA and FFHA claims, leading only to further confusion.  Defendants cannot be reasonably expected to respond to seven claims for relief combined into two counts with factual allegations from other unrelated counts in support.  Harvick's claims for abuse of process, violation of Fla. Stat. § 760.11, intentional

---

[5]   Counts 4 and 5 appear as the third and fourth counts in the Amended Complaint.  (*See* Doc. 33, pp. 15–18, ¶¶ 37–46).

infliction of emotional distress, invasion of privacy, trespassing, stalking, and harassment will therefore be dismissed as impermissible shotgun pleading.

### C.   Leave to Amend

As a final matter, the Court must discuss whether it is appropriate to grant Harvick another opportunity to amend his complaint.  It is well-settled that a court should not dismiss a plaintiff's complaint for failing to state a claim without first granting leave to amend.  *Thomas v. Farmville Mfg. Co., Inc.*, 705 F.2d 1307, 1307 (11th Cir. 1983) (per curiam).  Nevertheless, a court may dismiss a claim without affording an opportunity to amend "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile."  *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (per curiam).

The Court finds that dismissal with prejudice is not appropriate at this time for the combination of claims Harvick attempts to allege in Counts 4 and 5.  This is only Harvick's second complaint and Harvick should be afforded one more opportunity to allege claims he believes are appropriate to his case.  The Court will therefore dismiss without prejudice all claims except Harvick's FHA and FFHA claims and allow Harvick to amend his complaint if he deems it appropriate.

## IV.   CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants, Oak Hammock Preserve Community Owners Association, Inc., Barry Rubin and Karen Varasdi's Motion to Dismiss Plaintiff's Amended Complaint with Prejudice (Doc. 34) is **GRANTED IN PART** and **DENIED IN PART** as follows:

a. Defendants' motion to dismiss is **GRANTED** as to Plaintiff's claims for abuse of process, violation of Fla. Stat. § 760.11, intentional infliction of emotional distress, invasion of privacy, trespassing, stalking, and harassment.  These claims are **DISMISSED WITHOUT PREJUDICE**.

b. Defendants' motion to dismiss is otherwise **DENIED**.  Specifically, Plaintiff has alleged cognizable claims for relief under the Fair Housing Act and the Florida Fair Housing Act.

2. Plaintiff may file a Second Amended Complaint **on or before August 10, 2015** if he believes it is appropriate.  If Plaintiff chooses not to file a Second Amended Complaint within this time period, Defendants shall answer Plaintiff's Fair Housing Act and Florida Fair Housing Act claims **on or before August 24, 2015**.

3. If Plaintiff chooses to file a Second Amended Complaint, Plaintiff shall do the following in writing his Second Amended Complaint:[6]

a. **Keep the Fair Housing Act and Florida Fair Housing Act claims, along with the facts supporting each, the same as they appear in the Amended Complaint (Doc. 33).[7]**

---

[6]   Plaintiff is reminded that he can access the Federal Rules of Civil Procedure at http://www.law.cornell.edu/rules/frcp   and   this   Court's   Local   Rules   at http://www.flmd.uscourts.gov/LocalRules.htm.   Harvick may also visit the Court's library, which is open to the public during normal business hours, in order to access these and other legal resources.

[7]   The filing of a Second Amended Complaint would replace the Amended Complaint in all respects.  Therefore, if Plaintiff were to change the factual allegations of his FHA and FFHA claims, he may unintentionally fail to state claims under those statutes, thereby risking their dismissal.

    b.  List every claim for relief in separate, consecutively numbered counts. For example, if Plaintiff wishes to allege claims for abuse of process, intentional infliction of emotional distress, and invasion of privacy, each of these claims should be set out in their own separate counts after the Fair Housing Act claim (Count 1) and Florida Fair Housing Act claim (Count 2).

    c.  Provide clear and concise facts to support each count. Plaintiff should not incorporate by reference the factual allegations of any previous count into another count.

    d.  Identify how Plaintiff has been injured or damaged by each count.

    e.  Identify the relief Plaintiff seeks for each count.

    **f.  Plaintiff's failure to follow the guidance in this Order may result in the Court dismissing any non-compliant claims with prejudice.**

4. Counsel for Defendants is **DIRECTED** to provide a copy of this Order to Plaintiff at the parties' July 24, 2015 mediation.

**DONE AND ORDERED** in Orlando, Florida on July 22, 2015.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
*Pro se* Plaintiff

11